**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**LUIS A. C. R.**

                                        **Plaintiff,**                                        **20-CV-1694Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                                        **Defendant.**

_____

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all proceedings

in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

Dkt. #18.

## BACKGROUND

Plaintiff applied for disability insurance benefits with the Social Security

Administration ("SSA"), on September 30, 2011, alleging disability beginning October 1,

2010, at the age of 33, due to carpel tunnel, sleep apnea, diabetes, high blood

pressure, high cholesterol, and arthritis. Dkt. #10, p.307 & Dkt. #12, pp.69-70.

On December 1, 2011, plaintiff was referred to Lake Shore Behavioral

Health ("Lake Shore"), by his primary care physician, Dr. Vazquez, for treatment of

depression, anxiety, insomnia and crying spells. Dkt. #10, p.447, 509 & 519. At his first appointment at Lake Shore, plaintiff advised that his symptoms started due to health problems and financial difficulties and was diagnosed with a depressive disorder and anxiety. Dkt. #10, p.450. Staff Psychiatrist Jeffrey D. Kashin, M.D., observed plaintiff to be depressed and anxious with a cooperative attitude, spontaneous speech and neat appearance. Dkt. 10, p.470. Dr. Kashin prescribed an anti-depressant and anti-psychotic medication. Dkt. #10, p.470. Plaintiff has continued mental health treatment at Lake Shore and Best Self Behavioral Health throughout the pendency of these disability proceedings.

On January 17, 2012, plaintiff underwent a consultative psychiatric examination by Renee Baskin, Ph.D. Dkt. #10, pp.582-586. Plaintiff reported that he had moved from Puerto Rico with his wife and two children, ages 14 and 11, approximately one year ago. Dkt. #10, p.582. Dr. Baskin reported:

> Depressive and anxiety-related symptoms are secondary to coping with chronic pain, coping with multiple medical problems, loss of livelihood, significant limitation, financial stress. Symptoms include dysphoric moods, crying spells, feelings of guilt and hopelessness, loss of usual interests, irritability, fatigue/loss of energy, diminished self-esteem, social withdrawal, excessive apprehension and worry, restlessness and muscle tension.

Dkt. #10, p.583. Plaintiff was observed to be "responsive to questions and cooperative," with adequate "manner of relating, social skills and overall presentation." Dkt. #10, p.583. Dr. Baskin opined that plaintiff "would have minimal to no limitations being able to follow and understand simple directions and instructions, perform simple tasks

independently, maintain attention and concentration, maintain a regular schedule, learn new tasks with supervision, make appropriate decisions and relate adequately with others" but "would have moderate limitations being able to deal with stress." Dkt. #10, p.584. Dr. Baskin diagnosed plaintiff with an adjustment disorder with mixed anxiety and depressed mood, as well as a pain disorder associated with general medical condition. Dkt. #10, p.585.

Plaintiff appeared with counsel and a Spanish interpreter at an administrative hearing before Administrative Law Judge ("ALJ"), Nancy Pasiecznik on October 1, 2013 and adjusted his alleged onset of disability date to May 18, 2011. Dkt. #10, p.67. Plaintiff testified that he was born in Puerto Rico, where he completed two years of university and worked as a welder and supervisor for a construction company before coming to Buffalo. Dkt. #10, pp.69-76. As relevant to the issues raised in this action, plaintiff testified that he saw a counselor at Lake Shore for panic attacks and anxiety. Dkt. #10, pp.82-83. Plaintiff testified that his panic attacks were pretty much under control, but his anxiety continued to be problematic. Dkt. #10, p.83.

Plaintiff appeared with counsel and a Spanish interpreter, as well as vocational expert ("VE"), Jeanne Beachler, at an administrative hearing before ALJ Donald T. McDougall on October 17, 2014, following ALJ Pasiecznik's retirement. Dkt. #10, pp.21 & 41-63. As relevant to the issues raised in this action, plaintiff testified that he was taking medication and attending counseling for anxiety and depression. Dkt. #10, p.47.

The ALJ rendered a decision that plaintiff was not disabled on December 10, 2014. Dkt. #10, p.21-34. The Appeals Council denied review on February 22, 2016. Dkt. #10, p.11. Plaintiff commenced an action in this Court on April 21, 2016. 16-CV-312. By Stipulated Order entered January 29, 2017, the matter was remanded to the Commissioner for further administrative proceedings. Dkt. #12, p.254.

On May 17, 2018, plaintiff underwent a consultative psychiatric examination by Gregory Fabiano, Ph.D. Dkt. #13, pp.129-136. Plaintiff reported a depressed mood, explaining: "Sometimes I feel depressed when I can't do the things I could do before." Dkt. #13, pp.129-130. Plaintiff also reported "dysphoric moods, loss of usual interests, irritability, diminished sense of pleasure and social withdrawal," as well as anxiety and occasional panic attacks. Dkt. #13, p.130. Dr. Fabiano observed plaintiff to be cooperative with adequate manner of relating, social skills and overall presentation. Dkt. #13, p.130. Plaintiff reported that his family relationships are "good" but he "has no friends." Dkt. #13, p.132. His attention and concentration was observed to be mildly impaired and his recent and remote memory skills were observed to be impaired due to distractibility. Dkt. #13, p.131. His insight and judgment were good. Dkt. #13, p.131. Dr. Fabiano opined that plaintiff

> appears to have mild limitations in ability to understand, remember, and apply simple directions and instructions. The [plaintiff] appears to have moderate limitations in ability to understand, remember, and apply complex directions and instructions; interact adequately with supervisors, coworkers, and the public; sustain concentration and perform a task at a consistent pace; and regulate emotions, control behavior, and maintain well-being. He does not appear to have evidence of limitation in ability to use reason and judgment

> to make work-related decisions; sustain an ordinary routine
> and regular attendance at work; or maintain personal
> hygiene and appropriate attire; and have awareness of
> normal hazards and take appropriate precautions.
> Difficulties are caused by adjustment problems and
> distractibility.

Dkt. #13, p.132. Dr. Fabiano diagnosed plaintiff with adjustment disorder with

depression and anxiety, chronic. Dkt. #13, p.132.

Plaintiff appeared with counsel and a Spanish interpreter, as well as VE

Jay Steinbrenner, at an administrative hearing before ALJ Mary Mattimore on October

9, 2018. Dkt. #12, pp.189-229. As relevant to the issues raised in this action, plaintiff

testified that he was seeing a counselor every two-three weeks and a psychiatrist every

three months. Dkt. #12, p.202. He testified that he continued to feel anxious, explaining

that thinking of things he wanted to do and then realizing he would not be able to do

them triggered his anxiety. Dkt. #12, pp.212 & 214. He denied difficulty interacting or

being around people. Dkt. #12, p.214.

The ALJ rendered a decision that plaintiff was not disabled on November

6, 2018. Dkt. #12, p.133. Plaintiff commenced an action in this Court on February 22,

2019. 19-CV-226. By Stipulated Order entered November 22, 2019, the matter was

remanded to the Commissioner for further administrative proceedings. Dkt. #13, p.558.

On September 21, 2020, plaintiff appeared by telephone with counsel and

a Spanish interpreter, along with medical expert ("ME"), John Kwock, M.D., ME Gerald

Koocher, Ph.D., and VE Andrew Vaughn, at an administrative hearing before ALJ Stephen Cordovani. Dkt. #13, pp.472-521. Dr. Kwock testified that he had reviewed all of the materials contained in plaintiff's file and answered questions related to plaintiff's physical functional capacity. Dkt. #13, pp.480-493. Dr. Koocher reviewed plaintiff's file and testified regarding plaintiff's mental functional capacity. Dkt. #13, pp.494-505. When asked to identify plaintiff's medically determinable impairments, Dr. Koocher testified that "this is obviously a [plaintiff] with multiple medical problems and a history of depression and anxiety." Dkt. #13, p.495. Relying primarily upon the consultative psychiatric evaluations by Dr. Baskin and Dr. Fabiano, Dr. Koocher testified that there was sufficient documentation to satisfy part A of the diagnostic criteria for depression under listing 12.04. Dkt. #13, pp.495-496. For example, Dr. Koocher noted evidence of depressed mood, diminished interest in most activities, sleep disturbance, decreased energy and social withdrawal. Dkt. #13, p.496. However, Dr. Koocher opined that the level of severity "did not reach anything like a marked impairment under the part B criteria" and did not exceed a moderate level. Dkt. #13, pp.496 & 500.

Specifically, Dr. Koocher opined that plaintiff suffered no more than mild limitation in ability to understand, remember or apply information; mild to moderate limitation in ability to interact with others; mild to moderate limitation in ability to concentrate, persist or maintain pace; and moderate limitation in ability to adapt or manage one's self. Dkt. #13, pp.497-500. Dr. Koocher clarified that plaintiff's limitation in ability to adapt or manage one's self was related to plaintiff's physical issues and pain which make some adaptive behaviors difficult. Dkt. #13, p.500. Dr. Koocher opined

that plaintiff's ability to understand, remember and carry out simple instructions and tasks would be "only mildly impaired." Dkt. #13, p.500.

When asked about plaintiff's ability to perform independent decision making, Dr. Koocher testified that "on the mental level, it should be relatively unimpaired," adding that plaintiff's level of impairment could increase to a moderate level if physical pain distracted him. Dkt. #13, p.501. Similarly, Dr. Koocher testified that plaintiff's ability to meet production quotas would be impacted by his physical rather than mental condition. Dkt. #13, p.501. From a cognitive point of view, Dr. Koocher testified that plaintiff should be able to handle most changes in the work place in terms of routine and processes, opining that although he would probably worry about his ability to keep up because of his physical problems, it would be in the mild to moderate range of impairment. Dkt. #13, pp.501-502.

When asked about plaintiff's capacity to interact with supervisors, Dr. Koocher testified that plaintiff's "ability to interact with others is not, in any way, described as compromised." Dkt. #13, p.503. Dr. Koocher acknowledged that plaintiff is described as becoming socially withdrawn, but noted that plaintiff "is not a person who's described as having significant interpersonal difficulties." Dkt. #13, p.504. Dr. Koocher confirmed that plaintiff would have no limitation interacting with supervisors or coworkers or the general public, adding, "if he's in a lot of pain, he's going to be distracted and cranky and so forth, but, basically, his interpersonal skills are not described as impaired anywhere in the record." Dkt. #13, p.504.

The VE classified plaintiff's past work as a construction project manager, which is a semi-skilled, light exertion position, but performed by plaintiff at the heavy exertion level. Dkt. #13, pp.512-515. When asked to assume an individual with plaintiff's age, education and past work experience with an exertional limitation for light work who could lift twenty pounds occasionally and ten pounds frequently; sit for up to six hours; stand and walk for up to six hours; frequently finger, feel, operate foot controls, climb ramps and stairs, balance and kneel; occasionally climb ladders, ropes or scaffolds, stoop, crouch, crawl, and work around hazards such as unprotected heights and dangerous moving parts; understand, remember and carry out simple instructions and tasks in a low stress environment involving only simple, unskilled work with no supervisory duties, independent decision making or production quotas with minimal changes in work routine and processes, the VE testified that plaintiff could not perform his past work, but could work as a mail clerk, cafeteria attendant and information clerk, each of which were unskilled, light exertion positions. Dkt. #13, pp.515-517. If plaintiff required use of an assistive device to ambulate, the VE testified that plaintiff could still work as an information clerk,[1] and could also work as a storage facility rental clerk, which was an unskilled, light exertion position, and order clerk, which was an unskilled, sedentary position.  Dkt. #13, p.517. The VE further testified that at the unskilled level of employment, an employers' tolerance for off-task time was 10-15% and one absence per month. Dkt. #13, p.518.

---

[1] Plaintiff notes that the position identified is actually call out operator. Dkt. #15-1, p.20.

The ALJ rendered a decision that plaintiff was not disabled on October 15, 2020. Dkt. #1, pp.436-459. Plaintiff commenced this action on November 20, 2020. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of

the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is

not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the

claimant must demonstrate that he has a severe impairment or combination of

impairments that limits the claimant's ability to perform physical or mental work-related

activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the

criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation

No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to

disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria

of a disabling impairment, the Commissioner considers whether the claimant has

sufficient residual functional capacity ("RFC"), for the claimant to return to past relevant

work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant

work, the burden of proof shifts to the Commissioner to demonstrate that the claimant

could perform other jobs which exist in significant numbers in the national economy,

based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).


In the instant case, the ALJ made the following findings with regard to the

five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful

activity since the alleged onset date of October 1, 2010; (2) plaintiff's obesity,

degenerative disc and joint disease of the low back and cervical spine, bilateral carpal

tunnel syndrome, diabetes mellitus with neuropathy, major depressive disorder and

generalized anxiety disorder constitute severe impairments; (3) plaintiff's impairments

did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform

light work with the following limitations: lift twenty pounds occasionally and ten pounds

frequently, sit for up to six hours, stand and walk for up to six hours, frequently finger, feel, operate foot controls, climb ramps and stairs, balance and kneel, occasionally stoop, crouch, crawl, climb ladders, ropes and scaffolds, work around hazards such as unprotected heights and dangerous moving mechanical parts, understand, remember and carry out simple instructions and tasks in a low stress work environment reflected by simple, unskilled work with no supervisory duties, independent decision-making or strict production quotas and minimal changes in work routine and processes in an environment which allows for use of an assistive device such as a cane or wheeled walker during ambulation; and (5) plaintiff was not capable of performing his past work as a construction project manager but was capable of working as an information clerk and storage facility rental clerk, each of which were unskilled, light exertion positions, and order clerk, which was an unskilled, sedentary position, and was not, therefore, disabled within the meaning of the SSA. Dkt. #13, pp.436-459.

Plaintiff argues that the ALJ disregarded overwhelming evidence from plaintiff's treating providers and consultative examiners of plaintiff's significant limitations interacting with others and relied instead upon the ME's unsupported opinion that plaintiff had no restrictions interacting with others to fashion an RFC which failed to incorporate any social limitations. Dkt. #15-1, pp.16-20. Plaintiff argues that this error is not harmless because all three of the jobs identified by the VE require significant interaction with people. Dkt. #15-1, pp.20-21.

The Commissioner responds that the ALJ properly weighed multiple medical opinions that plaintiff had no more than a moderate limitation in interacting with others which provided substantial evidence for his RFC limiting plaintiff to work requiring an ability to understand, remember and carry out simple instructions and tasks in a low stress work environment involving simple, unskilled work with no supervisory duties, no independent decision-making, no strict production quotas and minimal changes in work routine and processes. Dkt. #16-1, pp.5-8. The Commissioner argues that the ALJ conducted a detailed analysis of multiple opinions regarding plaintiff's ability to interact with others at step three and properly concluded that plaintiff suffered mild limitations in this area. Dkt. #16-1, p.8. Accordingly, the Commissioner argues that substantial evidence supports the ALJ's RFC. Dkt. #16-1, pp.8-11.

Although the regulations relating to evaluation of medical evidence for disability claims have been amended to, *inter alia*, eliminate the treating physician rule, plaintiff's application for disability was filed on September 30, 2011, which is prior to the March 27, 2017 effective date of the amendments. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed.Reg.5844-01, at *5844 (Jan. 18, 2017). Thus, where a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, it will be afforded controlling weight. *Byam v. Barnhart*, 336 F.3d 172, 183 (2d Cir. 2003)*; White v. Saul*, 414 F. Supp.3d 377, 383 (W.D.N.Y. 2019), *quoting* 20 C.F.R. § 404.1527(c)(2).

The ALJ may afford less than controlling weight to a treating physician's opinion if it fails to meet this standard, but is required to provide good reasons for the weight assigned upon consideration of, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist. *Greek v. Colvin,* 802 F.3d 370, 375 (2d Cir. 2015). Thus, the opinion of a treating physician is not entitled to controlling weight if it contains internal inconsistencies or contradicts the treating physician's treatment notes. *Monroe v. Cimm'r of Soc. Sec.*, 676 Fed. App'x 5, 7 (2d Cir. 2017). Moreover, the opinion of a treating physician need not be given controlling weight if it is not consistent with other substantial evidence in the record, including the opinions of other medical experts, such as a consulting physician. *Halloran v. Branhart*, 362 F.3d 28, 32 (2d Cir. 2004); *See Baszto v. Astrue*, 700 F. Supp.2d 242, 249 (N.D.N.Y. 2010) (ALJ may rely upon the opinion of examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability). "Genuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

In reaching his conclusion that plaintiff had a mild limitation in his ability to interact with others, the ALJ considered plaintiff's testimony reporting social isolation due to anxiety, but noted plaintiff also reported spending time with family and friends without difficulty and was able to attend appointments. Dkt. #13, p.444. The ALJ also considered Dr. Vazquez's opinion that plaintiff has moderate limitations in this area, but

noted treatment records consistently reported that plaintiff was cooperative with an appropriate mood and affect upon examination. Dkt. #13, p.444. The ALJ further noted that consultative examinations by Dr. Baskin and Dr. Fabiano indicated that plaintiff had a cooperative manner of relating and adequate social skills and that Dr. Koocher opined that plaintiff had no more than moderate limitations in mental functioning. Dkt. #14, p.44. Specifically, Dr. Koocher opined that although plaintiff is described as socially withdrawn, there was no indication in the record of interpersonal difficulties to suggest that plaintiff would have any limitation interacting with supervisors or coworkers or the general public. Dkt. #13, p.504.

The ALJ afforded significant weight to the medical expert opinion of Dr. Koocher because he is a medical specialist who possessed an understanding of the evidentiary requirements of the SSA disability program and had reviewed all of the medical evidence. Dkt. #13, p.455. The ALJ found Dr. Koocher's opinion highly persuasive because it was well supported by the objective medical evidence, including grossly normal mental status examinations and conservative treatment revealing modest findings during the course of nearly ten years of mental health treatment. Dkt. #13, p.456. The ALJ also afforded the consultative opinions of Dr. Baskin and Dr. Fabiano significant weight because, *inter alia*, their opinions were consistent with each other and with Dr. Koocher, as well as with the mental health treatment records demonstrating grossly normal mental status. Dkt. #13, p.451.

The ALJ afforded partial, but not controlling weight to Dr. Kashin's opinion that plaintiff had moderate limitations in all areas of mental function, explaining that Dr. Kashin's opinion was generally consistent with the correlating and contemporaneous treatment records since December 2011 when the claimant engaged in mental health treatment and also generally consistent with the consultative psychiatrists and medical expert, as well as with the conclusions of plaintiff's therapist. However, the ALJ afforded little weight to the therapist's opinion that plaintiff was not able to be around others for long periods of time due to anxiety attacks because she is not an acceptable medical source and her opinion was not consistent with or supported by the totality of the evidence or other medical opinions, including the opinion of the medical expert after review of the record as a whole. Dkt. #13, p.454. The ALJ found that the totality of the evidence did not support such limitations given the plaintiff's wide-range of activities of daily living and relatively normal clinical mental status findings and benign treatment throughout the relevant period, which consisted of nearly 10 years of his own treatment records from Lake Shore and Best Self, including consistently low scores on the depression questionnaire. Dkt. #13, pp.453-454. The ALJ concluded that although some moderate level limitations were warranted to accommodate the plaintiff's mental impairments, there was no support from the totality of the evidence regarding an inability to work around others. Dkt. #13, p.454. In as much as the ALJ provided a detailed explanation for his assessment of the various medical opinions within the record, particularly with respect to plaintiff's ability to interact with others, the Court finds that his RFC determination is supported by substantial evidence.

**CONCLUSION**

Based on the foregoing, plaintiff's motion for judgment on the pleadings

(Dkt. #15), is denied and the Commissioner's motion for judgment on the pleadings

(Dkt. #16), is granted.


The Clerk of the Court is directed to close this case.


**SO ORDERED.**


**DATED:**    **Buffalo, New York**
             **March 31, 2023**

                              **s/ H. Kenneth Schroeder, Jr.**
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**

-16-